## WOLLENSAK OPTICAL CO. v. ILEX OPTICAL CO.

(District Court, W. D. New York. October 18, 1912.)

No. 487.

PATENTS (§ 328*)—INFRINGEMENT—PHOTOGRAPHIC SHUTTERS.

The Wollensak patents, Nos. 679,134 and 700,878, each for improvements in photographic shutters, narrowly construed, and limited to the precise construction shown, as required by the prior art and the proceedings in the Patent Office, *held* not infringed.

In Equity. Suit by the Wollensak Optical Company against the Ilex Optical Company. On final hearing. Decree for defendant.

C. Schuyler Davis, of Rochester, N. Y., for complainant.
Harold H. Simms, of Rochester, N. Y., for defendant.

HAZEL, District Judge. This is an action to enjoin the alleged infringement of letters patent Nos. 679,134 and 700,878, granted to Andrew Wollensak for improvements in photographic shutters. The claim in issue of patent No. 679,134 reads as follows:

"1. In combination with the exposure mechanism of a photographic shutter, a pivotal master-lever formed with two branches at either end, each branch having an operating-terminal, and means for turning said master-lever on its bearing, substantially as shown and described."

The claim is divided into four elements: (1) The exposure mechanism; (2) a pivotal master-lever, with two branches on each end thereof; (3) an operating-terminal on each branch; and (4) means for turning the master-lever. The defenses relied upon are anticipation and noninfringement.

The improvement resides in the form and construction of the master-lever, which has at each end two branches, provided with oper-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ating-terminals, or projections, which co-operate with other members in the rapid opening and closing of the shutter blades, so as to control or graduate the transmission of light. The positioning of terminals on a master-lever for use in connection with a photographic shutter, in such a way as to permit its operation, with other elements or parts, to in turn open and close the shutter blades, was concededly old in the art, and was common in shutter devices of this description.

In the Wollensak patent under discussion the master-lever is assembled with other parts in a casing, and in operation determines the character of the shutter exposure—that is, as to whether it shall be a so-called time, bulb, or instantaneous exposure—and its movements are actuated by a spring which is normally held in tension by the setting movements of the shutters. The two branches at each end of the master-lever are shaped to form terminals—the first, to engage the operating member; the second, the detaining members; the third, the exposure member; while the fourth abuts the side walls of the casing. All of these elements, however, were old and commonly used in the modern photographic art, and therefore invention, if there is invention, must be found to exist in the shape or configuration of the master-lever, with its branches and terminals operating the shutters.

Several patents claimed by defendant to anticipate the patent in suit have been introduced in evidence. In the prior Wollensak patent, No. 642,861, the master-lever is provided with two branches, one of which carries three projections, and the other only one. The only perceivable difference between the two levers is in the specific form, the earlier one having a smaller number of branches to actuate or operate the shutter blades. By the adaptation of a four-branch master-lever, a minor lever or terminal in the earlier patent could be safely left out. Perhaps in this respect, and in the addition of a stop terminal, an improvement was made in the operation of the exposure mechanism; but the modus operandi was upon practically the same principle. The functions of the projections or terminals on the different master-levers are identical; i. e., to move or actuate different parts of the exposure mechanism.

While it is appreciated that mechanism of this description is delicately constructed, and requires exact adjustment of the parts, yet as the operative characteristics and function of the master-lever, with branches and terminals, were fairly well known and understood in the art at the date of the invention, it is not thought that Wollensak's later elaboration of the master-lever required such an exercise of inventive skill and ingenuity in its consummation as to entitle the patent to much latitude. Indeed, the German patent to Prigge & Schlegel, No. 69,227, and the patent to Brueck, No. 749,162, support this view, and require giving the patent in suit a strict construction.

In the German patent are shown two branches at either end of a master-lever, each branch having projections or terminals, practically four in all, to operate the parts; and though the master-lever is without the precise function of the claim in controversy, yet its construction and mode of operation produce merely a different method of actuating the shutter device. True, it is without the projections; but

it requires none, as the master-lever is directly connected with a shutter ring, the movements of which are limited by a tension spring.

In the Brueck patent, which under the proofs concededly antedates the patent in suit, there is also a master-lever, with terminals practically at both ends to actuate the shutter blades, and there is also the stop terminal, which affects or influences the movements of the master member. The terminals appear to be positioned unlike those described in the Wollensak specification, but nevertheless their construction and mode of operation have an important bearing upon the scope of the claim in controversy.

Construing such claim narrowly, and limiting it to a master-lever having four terminals, two at each end, to enable the master-lever, when in operation, to engage other elements, and to afford a stop for the master-lever, it is not thought that the defendant's shutter device is an infringement. True enough, the defendant employs in its shutter device the specified elements to actuate and operate the shutter blades; but the terminal abutting the side wall of the casing to limit the movements of the master-lever as in complainant's is lacking, and the control thereof is apparently upon another principle. A lever and hook connect the master-lever with the exposure ring, and when the shutter is closed the hook and exposure member are held in place by the master-lever, with the result that the latter closes the blades, while in complainant's patent the blades are closed by a spring attachment.

In patent No. 700,878 the claims in controversy are the first, second, sixth, seventh, eighth, tenth, and twenty-third; the twenty-seventh claim having been abandoned. In each of said claims, which are for a combination of elements, is described a shutter mechanism of the type hereinbefore discussed, and like that of the Wollensak patent No. 679,134. Claims 1 and 2 specify that the retarding device and motor mechanism by which the blades are actuated are independent of each other; and claims 6, 7, 8, and 10 specify independent action by such elements, while claim 23 describes the device in detail. It will be enough herein to reproduce claims 1 and 23, which read as follows:

"1. A photographic shutter for making a series of graded exposures, comprising, in combination with shutter-blades, mechanism for determining the duration of said various exposures, and motor mechanism for the shutter-blades, said mechanisms being independent of each other, and a controlling-body common to both, substantially as shown and described."

"23. A photographic shutter adapted to make graded exposures, having shutter-blades and mechanism for operating them, and a retarding device for controlling the exposure mechanism, and a spring for returning the retarding device to its normal place, substantially as shown and described."

In the construction of claims 1 and 2, which are substantially similar, the action of the Patent Office, as disclosed by the file wrapper in evidence, is significant. In the outset claim 1 did not contain the feature of "a controlling-body common to both" mechanisms relating to the operation of exposure and shutter blades, and such inclusion, after rejection of the broader claim, was a distinct limitation upon the feature of independence which must attend said claims to insure

their novelty. The expert witnesses have disagreed upon the question of the meaning of claim 1, as regards whether the retarding mechanisms are independent of each other, or whether such mechanisms act independently of each other.

The rejection of the original claim was on the Vogt patent, No. 668,965, which showed the feature of physical independence of such elements as distinguished from independent action of the mechanisms. Inasmuch as the patentee acquiesced in the disposition by the Patent Office of claim 1, and added an additional feature to the claim, which manifestly was a limitation, he is bound thereby; and it must now be held that the words "being independent of each other" refer to a method by which the retarding element was held out of action while (quoting from the specification) "the twin detents act, and to hold the retarding mechanism and the twin detents all out of action simultaneously." Thus construing claims 1 and 2, there is no infringement of them by the defendant. To omit attaching to claims 1 and 2 the limitation of a "controlling-body common to both" mechanisms would otherwise result in anticipation by the prior patents to Vogt, Wollensak, Dey, and Brueck.

The other claims in controversy specify independent action of the retarding device; but such element is not shown by a fair preponderance of the evidence to be included in the defendant's device. In complainant's shutter, a so-called setting shutter, a spring is used in connection with a lever, by which a pump piston $h'$ is normally held down, and when the shutter blades are closed the piston of the pump acts independently of any other element; that is, it is caused by the spring to descend to its normal position. This mode of operation is essentially different from defendant's construction, which contains a toothed wheel coacting with the master-lever, which arrests the movements of the wheel on the instant that the movement of the master-lever has ceased. There is no independent action of the wheel unconnected with the movement of the shutter mechanism. That the words "acting independently" have a narrow signification is indicated by the language of the specification, wherein it is said:

"Also the retarding mechanism and the shutter mechanism act independently of each other, either acting at times without the other."

I quite agree with the expert witness for the defendant that the quoted excerpt from the specification is not susceptible of an interpretation which would fairly include the defendant's retardation by the master-lever of the toothed wheel or the boot-shaped projection.

In view of the prior art, it was a question whether complainant's device disclosed a patentable invention. The employment of springs to actuate or control retarding mechanism to move instrumentalities in one direction or another was very old. For instance, in the British patent to Gotz, No. 7,650, there is shown a spring within an air cylinder, by which the retarding piston is shifted to make connection with a master element which is actuated by a shutter. In the patent to Furnell of 1844, No. 7,746, a brake shoe is moved in one direction by a spring and in another direction by an eccentric. Thus is shown

a retarding mechanism moved by a spring to the point where the retardation is initiated. So, also, in the French patent to Coninck is shown a wheel similar to the retarding wheel of defendant's device, capable of rotating in one direction, and connected to a master member, and moved by an arm actuated by a spring. Such construction bears on the novelty of patent No. 700,878, in that it shows that at the date thereof photographic shutters having a master-lever positioned to move in one direction without interfering with the movements of the retarding device were familiar to the art. In the patent to Turner & Clark and in the patent to Dey are also shown springs for use in actuating a retarding device independently of the shutter mechanism.

The defendant has not a setting or release lever possessing the characteristics of the levers described in claims 7 and 8. It is unnecessary to dwell further upon the various elements of the claims in controversy, or upon the contradictory evidence of the expert witnesses, both of which I have carefully considered in connection with my examination of the physical exhibits. As the novelty of the various claims is thought of doubtful validity, the doctrine of equivalency of the defendant's elements and mode of operation should not be applied, even though the defendant substantially achieves the same result as complainant. Such I conceive is the rule, when, as here, the claims contain the words "substantially as described." Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586.

As in my judgment the defendant has not appropriated the essentials of claim 1 of patent No. 679,134, nor of the claims in controversy of patent No. 700,878, the bill should be dismissed, with costs.